[—— NYS2d ——]

In the Matter of NIAGARA MOHAWK POWER CORPORATION, Appellant, v TOWN OF CLAY BOARD OF ASSESSORS et al., Respondents.

Fourth Department, February 3, 1995

## APPEARANCES OF COUNSEL

*Helm, Shapiro, Anito & McCale, P. C.,* Albany *(Mark Lansing* of counsel), for appellant.

*Richard D. Ryan,* Syracuse, for respondents.

## OPINION OF THE COURT

GREEN, J. P.

In this proceeding, petitioner, Niagara Mohawk Power Corporation (Niagara Mohawk), seeks review of respondents' determination correcting the final tax assessment roll to remove partial real property tax exemptions for two parcels of property owned by petitioner in the Town of Clay (Town). The issue before this Court is whether respondents possess authority under article 5 of the Real Property Tax Law to rescind the partial exemptions and to tax those parcels at full value.

The Town's final assessment roll for the year 1993 included partial property tax exemptions granted to Niagara Mohawk pursuant to RPTL 485-b. Shortly after the final assessment roll was filed on July 1, 1993, the Town Assessor was informed by the State Division of Equalization and Assessment (Division) of the decision of the Court of Appeals in *Matter of Long Is. Light. Co. v Board of Assessors* (81 NY2d 1029 [*LILCO* ]). In a memorandum prepared for the benefit of local taxing authorities, the Division advised that, under the holding in *LILCO,* utilities are not entitled, with respect to transmission and distribution equipment, to the partial business investment tax exemption provided in RPTL 485-b.

Upon receiving that information on the *LILCO* decision, the Town Assessor prepared petitions seeking to correct an "error in essential fact" *(see,* RPTL 550 [3]) appearing on the current assessment roll *(see,* RPTL 553 [1] [f]) by removing the partial exemptions previously granted to Niagara Mohawk. Those petitions were transmitted to the Board of Assessment Review (Board) and mailed to Niagara Mohawk, as required by RPTL 553 (2). At its meeting on July 20, 1993, the Board granted the petitions *(see,* RPTL 553 [3] [b]). The Board then delivered a verified statement showing the changes in assessments for Niagara Mohawk's property to the appropriate tax levying body, Onondaga County, and filed a copy of that statement with the final assessment roll *(see,* RPTL 553 [3] [c]).

After receiving notice of the Board's action, Niagara Mohawk commenced the instant proceeding, seeking review of

respondents' determination rescinding its partial exemptions on the 1993 tax roll. The parties agree that there are no disputed factual issues and that summary determination of the proceeding is appropriate.

Niagara Mohawk contends that respondents lacked authority to change its assessment after the final assessment roll had been filed. In support of that argument, Niagara Mohawk cites *Matter of Niagara Mohawk Power Corp. v Town of Onondaga* (63 NY2d 786, *revg, on dissent of Boomer, J.,* 96 AD2d 1138). That case holds that, absent express statutory authority, an assessor is powerless unilaterally to change the tentative assessment roll after it has been filed; "the only power the assessor has to change the roll is that expressly conferred by statute" *(Niagara Mohawk Power Corp. v Town of Onondaga,* 96 AD2d, *supra,* at 1139 [Boomer, J., dissenting]; *see also, People ex rel. Chamberlain v Forrest,* 96 NY 544; *Clark v Norton,* 49 NY 243; *Westfall v Preston,* 49 NY 349).

In this proceeding, unlike *Town of Onondaga (supra),* the Assessor did not change the assessment roll on his own. Rather, he sought correction of the roll by preparing and transmitting petitions for correction of errors to the Board, in accordance with the requirements of RPTL 553 (2) *(cf., Westchester Park Assocs. v Unmack,* 123 AD2d 494, 495, *lv denied* 69 NY2d 604). Thus, the Assessor acted within his authority and the procedures prescribed by RPTL 553. The Board, similarly, was authorized to act upon the changes recommended in the Assessor's petition by preparing and verifying a statement showing those changes in assessments and delivering that verified statement to the appropriate tax levying body, Onondaga County *(see,* RPTL 553 [3] [c]).

The challenge of Niagara Mohawk to the change in its assessment arises from the statutory provisions governing the next step in the process of correcting a final assessment roll. Subdivision (4) of RPTL 553 details the actions the appropriate tax levying body must take "[u]pon receipt of the verified statement of changes made by the board of assessment review." Paragraph (a) of RPTL 553 (4) sets forth the procedures to be followed for the correction of an error in essential fact as defined in paragraph (a), (b), (c) or (d) of RPTL 550 (3) *(see,* RPTL 553 [4] [a] [2], [4]). No provision, however, specifies the action to be taken by the tax levying body to correct an error in essential fact defined in RPTL 550 (3) (e), the type of error at issue in this proceeding. That paragraph defines, as an error in essential fact, "an incorrect entry of a partial exemp-

tion on an assessment roll for a parcel which is not eligible for such partial exemption."

The central issue in this proceeding is how to interpret the Legislature's failure to specify the implementing action to be taken by the tax levying body with respect to an erroneously granted partial exemption. The parties cite competing canons of statutory construction to resolve that issue. Niagara Mohawk contends that the absence of an explicit statement of the remedial action to be taken by the tax levying body to remove an erroneously granted partial exemption on the assessment roll expresses the Legislature's intention that those errors not be subject to correction. In support of that argument, Niagara Mohawk cites the maxim, *expressio unius est exclusio alterius:* "[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Law of NY, Book 1, Statutes § 240).

Respondents, on the other hand, maintain that the Legislature would not have included improperly granted partial exemptions within the class of errors subject to administrative correction unless it intended the actual correction of such errors on the final assessment roll. Respondents' position finds support in the rule that "[s]tatutes will not be construed as to render them ineffective" (McKinney's Cons Laws of NY, Book 1, Statutes § 144; *see,* 97 NY Jur 2d, Statutes, § 180, at 139).

Both parties, moreover, cite rules of statutory interpretation applying specifically to tax proceedings. Niagara Mohawk draws our attention to the well-settled principle that "tax laws are to be strictly construed against the taxing power" *(People ex rel. Bingham Operating Corp. v Eyrich,* 265 App Div 562, 564, *lv denied* 266 App Div 803; *accord, Quotron Sys. v Gallman,* 39 NY2d 428, 431), and respondents reply with the equally well-established rule that "[s]tatutes creating tax exemptions 'must be construed against the taxpayer' " *(Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.,* 83 NY2d 44, 49, quoting *Matter of Moran Towing & Transp. Co. v New York State Tax Commn.,* 72 NY2d 166, 172-173).

The Court of Appeals recently pointed out in *Matter of 1605 Book Ctr. v Tax Appeals Tribunal* (83 NY2d 240, 244, *cert denied* — US —, 130 L Ed 2d 19) that, "[a]s often happens, generalities of construction axioms neutralize one another."

Thus, in determining whether the RPTL provides the tax levying body with the authority to act upon corrections made for partial exemptions on the final assessment roll, the competing rules of construction must be viewed in light of their function as guides for discerning legislative intent. "The Court's cardinal function in interpreting any statute should be to ' "attempt to effectuate the intent of the Legislature" ' " *(Matter of 1605 Book Ctr. v Tax Appeals Tribunal, supra,* at 244, quoting *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669, 674, quoting *Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208).

With that overriding principle in mind, we conclude that the Legislature intended to confer upon the tax levying body the authority to implement the determination by the Board correcting the final assessment roll to remove the erroneously granted partial exemptions. That conclusion finds support in the history of the relevant statutory provisions. The recent amendments to RPTL article 5 evince the Legislature's intention to broaden the scope of administrative correction of errors on final assessment rolls. In 1986 the Legislature added "an error in essential fact appearing on the current assessment roll" to the class of errors subject to administrative correction (RPTL 553 [1] [f], added by L 1986, ch 317, § 3). At the same time, subdivision (4) of section 553 was amended to set forth the actions to be taken by the tax levying body with respect to an error in essential fact as defined in paragraph (a), (b), (c) or (d) of RPTL 550 (3) (RPTL 553 [4] [a] [2], [4], added by L 1986, ch 317, § 5).

Two years later, in 1988, the definition of "error in essential fact" was enlarged to include "an incorrect entry of a partial exemption on an assessment roll for a parcel which is not eligible for such partial exemption" (RPTL 550 [3] [e], added by L 1988, ch 160, § 5). The Legislature, however, did not add a corresponding section to the procedural provisions of RPTL 553 (4) detailing the action to be taken by the tax levying body. In our view, however, that omission was not intended to deprive the tax levying body of the authority to correct the final assessment roll. The 1988 amendment to RPTL 550 (3) was clearly intended to permit correction of erroneously granted partial exemptions. As the Division explained in its memorandum supporting that amendment: "Although it is possible to recover taxes for taxable real property mistakenly entered on the wholly exempt portion of an assessment roll, there is no equivalent procedure for an incorrect entry of a

partial exemption. The definition of 'error in essential fact' should be expanded accordingly" (1988 McKinney's Session Laws of NY, at 1978).

We conclude, therefore, that the Legislature's purpose in expanding the definition of "error in essential fact" to include incorrect entry of a partial exemption was to grant the tax levying body the same authority to act upon the correction of an erroneous partial exemption as it has to act upon the correction of an erroneous full exemption. Thus, we agree with the conclusion of Supreme Court, shared by the other three courts that have squarely addressed the issue *(Matter of Niagara Mohawk Power Corp. v Town of Potsdam Bd. of Assessors,* 160 Misc 2d 606, *adhered to upon renewal and rearg* 162 Misc 2d 388; *Matter of Niagara Mohawk Power Corp. v Town of Cicero Bd. of Assessors,* Sup Ct, Onondaga County, July 11, 1994, Roy, J.; *Matter of Niagara Mohawk Power Corp. v Town of Palermo,* Sup Ct, Oswego County, Oct. 14, 1994, Hurlbutt, J., index No. 93-1620), that the tax levying body possesses the authority to implement the determination of the Board of Assessment Review correcting the final assessment roll to remove erroneously granted partial exemptions. Accordingly, the judgment of Supreme Court should be affirmed.

The contention of Niagara Mohawk that, pursuant to RPTL 485-b (7), respondents lacked authority to rescind the exemptions and its reliance on *Matter of Niagara Mohawk Power Corp. v Town of Watertown Bd. of Assessors* (Sup Ct, Jefferson County, Mar. 31, 1994, Gilbert, J., index No. 93-1809), raised for the first time in its reply brief, has not been considered *(see, O'Sullivan v O'Sullivan,* 206 AD2d 960).

PINE, WESLEY, DAVIS and BOEHM, JJ., concur.

Judgment unanimously affirmed, with costs.